# EXHIBIT 1

TARANEH VESSAL

             Claimant,

    v.

CITIBANK (SOUTH DAKOTA), N.A.,
BLATT, HASENMILLER, LEIBSKER &
MOORE, LLC, and IRYNA MARTYNIV NIRO, ESQ.,

        Respondents

JAMS
ARBITRATION APPEAL


Case No.  1340010311

---

## ARBITRATION APPEAL FINAL AWARD

---

### CLAIMANT, SELF-REPRESENTED

Taraneh Vessal, Pro Se
P.O. Box 4764
Oak Brook, Illinois 60522-4764
Telephone:  312-933-8257


### COUNSEL FOR RESPONDENTS

Gregory R. Dye, Esq.
Blatt, Hasenmiller, Leibsker & Moore
125 S. Wacker Drive
Suite 400
Chicago, IL  60606
Telephone:  312-704-9440
Fax:  312-704-9430

Iryna Martyniv Niro, Esq.
Blatt, Hasenmiller, Leibsker & Moore
125 S. Wacker Drive
Suite 400

Chicago, IL 60606
Telephone: 312-704-9440
Fax: 312-704-9430

ARBITRATION APPEAL PANEL

Hon. John J. Hughes, (Retired)
JAMS
1717 Arch St., Suite 3810
Philadelphia, PA 19103
Telephone: 215-246-9494
Fax: 215-246-0940

Hon. William D. Missouri, (Retired)
JAMS
6411 Ivy Lane
Greenbelt, MD 20770
Telephone: 301-441-3366

Hon. Maria M. Sypek, (Retired)
JAMS
1717 Arch St., Suite 3810
Philadelphia, PA 19103
Telephone: 215-246-9494
Fax: 215-246-0940

CASE MANAGER

Mr. John Carr
One Beacon Street, Suite 2210
Boston, MA 02108-3106
Telephone: 617-228-0200

I. PARTIES and COUNSEL

Claimant, Taraneth Vessal is from Oak Brook, Illinois and is self-represented. Citibank (South Dakota), N.A. (hereafter referred to as "Citi" or "Respondent") is a corporation. Blatt, Hasenmiller, Leibsker & Moore, LLC, (hereafter referred to as "Blatt") is a law firm located in Chicago Illinois. Iryna Martyniv Niro is an attorney associated with the Blatt law firm. Mr. Richard R. Dye and Ms. Iryna Martyniv Niro of the Blatt law firm represented all of the Respondents.

## II. ARITRATION PANEL

The Appeal Panel Members ("The Panel") are Hon. John J. Hughes, (Ret.), JAMS, Philadelphia PA; Hon. William D. Missouri, (Ret.), JAMS, Greenbelt, Maryland; and Hon. Maria M. Sypek, (Ret.), JAMS, Philadelphia, PA. All of the Arbitrators are neutral.

## III. ARBITRATION AGREEMENT AND RULES and APPLICABLE LAW

It has been previously ruled, as a result of a Motion to apply the JAMS Optional Arbitration Appeal Procedure pursuant to the JAMS Comprehensive Arbitration Rules and Procedure Rule 34 filed by the Respondents, that the arbitration appeal be governed by the Card Agreement, specifically by the terms under "When is an arbitration award final." The JAMS Comprehensive Arbitration Rules and Procedures otherwise apply as well as the JAMS Consumer Minimum Standards. Pursuant to the Card Agreement, the substantive law of South Dakota is controlling on the issues raised by the Respondent re: the Claimant's debt. Illinois procedural law is applied where necessary when procedural matters are relevant to the original litigation filed by Citi in the Illinois State Court system.

## IV. SUMMARY OF CLAIMS, COUNTERCLAIMS and RESPONSES

Ms. Vessal's Complaint alleges violations of the Fair Debt Collection Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2 et. seq., Uniform Deceptive Trades and Practices Act 815 § 510 et seq., Truth in Lending Act 15 U.S.C. § 1601 et seq. (TILA), Telephone Consumer Protection Act (TCPA) 47 U.S.C. § 227 et seq., Banks and Banking Act 12 C.F.R. 225 et seq., and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Damages, including statutory, actual, and punitive as available under the above acts and statutes are sought against all Respondents jointly and severally. Essentially Claimant Vessal maintains that the Respondents used unfair and unlawful tactics and harassing behaviors in their efforts to collect a credit card debt which resulted from the use of the credit card for cash advances.

The Respondents deny violating any of the above statutes and assert by way of a counterclaim (essentially the allegations contained in the original litigation and the counterclaim in the original arbitration since no counterclaim was actually filed in the within appeal, see Procedural History, *infra*.) for the balance due on the account in the amount of $23,659.65.

## V. PROCEDURAL HISTORY

This matter was initially filed by Citi against Taraneh Vessal under the caption, Citibank (South Dakota) N.A. v. Taraneh Vessal, Case No 10M1 132741 in the Circuit Court of Cook County, Illinois, Municipal Department, First District, Cook

3

County on April 19, 2010, seeking $23,659.65 plus costs. The return date was set for May 24, 2010. Ms. Vessal filed an answer on November 23, 2010. On November 29 2010 a motion to dismiss the complaint and have the matter resolved in an arbitration proceeding per Citibank's Credit Card Agreement was filed by Ms. Vessal. This motion was opposed by Ms.Niro and the Court denied the motion to dismiss. Ms. Vessal filed an appeal of that order including a brief in support of the appeal. Ms. Niro filed a motion to dismiss the appeal initially claiming that Ms. Vessal failed to timely serve her brief. However that appeared to be an error. Nonetheless, Ms. Niro thereafter agreed to arbitration and asked Ms. Vessal to enter an agreement to dismiss the appeal. Ms. Vessal would not agree. However the Court dismissed the appeal and incorrectly sent the matter to a court mandated arbitration program. That referral was ultimately corrected. Ms. Vessal filed a request for Arbitration through the JAMS offices in Chicago, IL. The original complaint was filed with JAMS on July 2, 2012. The matter was given Case No. 1340008324 and the hearing was conducted on March 12, 2013. The Final Award was dated June 14, 2013 and was received by the Claimant on June 27, 2013. On that same date Ms. Vessal filed a Notice of Election of the Arbitration Award and Appeal per Terms of Citibank's Contract. A "Complaint" was filed by the Claimant on December 9, 2013.

On April 4, 2014 an initial Case Management conference call was held with all parties, the Panel and JAMS case managers. It was determined that the Respondents would file a motion asserting that the JAMS Optional Arbitration Appeal Procedure be used in lieu of the format contained in Citibank's Agreement. A motion schedule was fixed. As a result the Panel by an Order dated, June 10, 2014, denied Citi's application and ordered that the matter proceed under the Card Agreement before the three Judge Panel with all evidence considered anew.

Ms. Vessal also made a motion for the Panel members to recuse themselves because the original Arbitrator's Final Award had been forwarded to them. This motion was denied in the same order of the Panel that resolved the arbitration format issue. Additionally, the Claimant made a motion to bar any *ex parte* communications between the JAMS administrative offices and/or the Panel with the Respondents to the exclusion of the Claimant. It was resolved in the conference call of June 20, 2014 and memorialized in Scheduling Order No. 2 dated July 1, 2014, that there would be no such *ex parte* communications.

Other motions were made concerning discovery deficiencies and were resolved by an oral decision. A motion *in limine* was filed by Ms. Vessal, seeking to strike any debt claim of the Respondent's because they failed to file a counterclaim in the appeal forum. This motion was denied on September 11, 2014 in a written decision. A motion for reconsideration was also filed by Ms. Vessal on the counterclaim issue and was denied on September 12, 2014. Neither party requested a stenographic record. The Arbitration hearing was conducted in Chicago, IL on September 16, 2014. The parties coordinated the specific issues that were to be decided and provided a handwritten list to the Panel on September 16, 2014. The parties provided simultaneously written submissions on October 17, 2014. The Final Arbitration Panel Award is due on November 17, 2014.

4

## VI. OPINION

### A. Taraneh Vessal's Claims:

#### 1. FAIR DEBT COLLECTION PRACTICES ACT.

The Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq. (FDCPA is the first statute that Ms. Vessal claims was violated by many practices of the Blatt law firm and Ms. Niro. Ms Vessal clearly worked very diligently to gather a number of consumer protection statutes that she maintains were violated. Her work is very extensive but is presented in a format that makes it difficult to determine which specific statute is being violated by which specific action. The parties agreed to a final list of issues that were in contention. This list was created by agreement between the parties at the conclusion of the hearing. The Respondents' written summation comports to the signed list of issues. The Claimant's submission unfortunately does not.

This "Opinion" will address the issues the parties agreed were in the case and will not consider anything that was not part of the Arbitration Hearing. If the Award fails to address any issue, claim, assertion or material contained in either party's summations, it is to be assumed that the Panel has decided that those issues are not relevant or material and have no significant merit. The list includes: 1) FDCPA vs. Blatt & Niro; 2) TCPA vs. Citi & Blatt; 3) Fair Credit reporting vs. Citi & Blatt (inaccurate reporting int. & rate; 4) TILA inaccurate int. & rate/& no agreement vs. Citi; 5) IL Consumer laws—Consumer Fraud & Uniform Deceptive Practices Acts against All; 6) Fair Billing; 7) Balance.

Note that the Panel has determined that the burden of proof necessary to prove the issues is proof by a "preponderance of the evidence." This burden of proof requires that the party asserting the claim must show that it is more likely true than not true that the matter or fact exists. The Panel will use this burden of proof throughout the Award when assessing the evidence.

FDCPA contains a statute of limitations that requires that any action be brought within one year from the date on which the violation occurs. 15 U.S.C.1692 k(d). Ms. Vessel filed her complaint on July 2, 2012 in the original JAMS arbitration matter, therefore any claims that are asserted to have occurred before July 2, 2011 are time barred. Ms. Vassal did not address this issue in her summation nor did she address it at the hearing. Mr. Dye presented this very issue in his opening. Ms. Vessal did not present any evidence that met this defense nor did she provide any argument or factual support that the statute was tolled in any way for any reason. As a result the asserted violations are time barred. The Panel will nonetheless address the merits of the issues raised for completeness.

##### (a) Blatt Law Firm failed to send an initial demand letter.

Ms. Vessal maintained that Blatt violated FDCPA by failing to send a letter before litigation was commenced. Ms.Niro testified clearly that the demand letter was mailed to Claimant on February 22, 2010. (Respondent's Exhibit B, line 036). Note

5

that this claim is clearly time barred. Though Ms. Vessal made no argument that the successive litigation or arbitration refreshes the FDCPA violations, case law does not support such an argument. See, *Calka v. Kicker, Craus & Bruh, LLP*, 1998 WL 437151 9S.D.N.Y. 1998). To the merits however, Ms. Vessel stated that the first communication she had from Blatt was a letter saying "a lawsuit has been filed against you" dated May 13, 2010. (Claimant's Exhibit B of Previously submitted Exhibits 12/9/13). However, Respondents through the testimony of Ms. Niro, clearly established that the initial letter was sent. The records of the law firm show that the demand letter was sent and that it was fully compliant with FDCPA requirements. The testimony showed that it was mailed to Ms. Vessal's address on February 22, 2010. This is sufficient proof. Receipt of the letter is not required by FDCPA. As a result, the Claimant has failed to meet the burden of proof required to support a violation of FDCPA on this issue.

    **(b) Blatt did not identify itself as a debtor collector on voicemail messages/prank calls to cell phone.**

        Blatt agrees that telephone calls were made to Ms. Vessel on May 24, June 3, and June 11, 2010. (Respondent's Exhibit B lines 183, 191 and 208). To pursue violatons for these calls a complaint would need to be filed on or before June 11, 2010 at the latest. No complaint was filed until July 2, 2012. Thus any claim is now time barred. Addressing the merits of the Claimant's allegation, she maintains that Blatt did not disclose its real identity when it left a voicemail. FDCPA requires that a debt collector identify himself as a debt collector, inform the consumer that the communication is an attempt to collect a debt and any information obtained will be used for that purpose. 15 U.S.C.1692e(11). Ms. Vessal provided two voicemails. There were no dates attached and one is only part of the message. The other is complete and though it cannot be clearly identified as a call from Blatt, the testimony maintained that the call as heard was fully compliant with FDCPA and would be the type of call that Blatt would have made. The caller identified himself by name, said he was a debt collector, identified the consumer who was the intended recipient of the call, and provided mini Miranda disclosures. There is no other evidence provided by Ms. Vessel in support of a violation of FDCPA. Since Claimant has the burden of proof, the claim fails on its merits as well as being time barred.

    **(c) Blatt added collection costs to the account and sent a "Bill" while account was in litigation.**

        Ms. Vessal asserts a violation of FDCPA because she received a letter dated December 15, 2010 (Claimant Ex. E of Previously Submitted Documents) which actually was a cover letter enclosing the Order that was entered on December 8, 2013 by the Court. It states nothing further other than the fact that the Order is enclosed. The letter contains references at the top of the letter indicating the following: creditor, type, reference #, account# (last four digits), balance due, debtor, case number. It is unclear what Ms. Vessal's complaint is except that it may be that after "Balance Due" the amount stated is "24116.65." The letter itself does not seek that amount. The testimony from Ms. Niro was that the account balance includes what Blatt's expenses include. It references what Blatt is also billing the client as well as the debt amount. The cost is not added to the balance being sought from Ms. Vessel. It is the amount Citi has not been paid plus expenses that have been incurred. Since the content of this letter did not seek that

amount nor did it seek any amount, the Panel finds that there is no evidence that Blatt was using "unfair or unconscionable means to collect or attempt to collect any debt." Ms vessel cites 15 U.S.C. § 1692f(1) in support of her claim which requires that interest, fees, and other charges would be unconscionable or unfair conduct if sought when not "expressly authorized by the agreement creating the debt or permitted by law." Since the content of the letter had nothing to do with seeking any balance due, there is no violation.

Lastly it should be noted that this issue is also time barred by the one year statute of limitations since the letter is dated December 15, 2010 and the complaint was filed on July 2, 2012.

**(d) Blatt and Niro willfully attempted to preclude arbitration.**

Ms. Vessal maintained that the Blatt law firm through Ms. Niro's actions, committed deceptive acts in violation of FDCPA by refusing to agree to Ms. Vessal's request for arbitration. This allegation is intertwined with the allegation that an incorrect, non-controlling agreement was provided by Niro in response to Ms. Vessal's motion to dismiss in favor of arbitration. When presented with Ms. Vessal's motion to dismiss and the opposition thereto, the Cook County Circuit Judge Panarese ruled in favor of Citi on this issue and denied Ms. Vessal's motion. Ms. Niro testified during the arbitration hearing, that she interpreted the agreement to offer a choice of arbitration or litigation. Apparently, the Court agreed with her analysis. Given that the Court agreed with counsel, there is support for Ms. Niro's testimony that she was not engaging in deceptive practices. The matter was then, appealed by Ms. Vessal. Ultimately, Citi agreed to the arbitration. Ms. Vessal would not agree to dismiss the appeal. Ms. Niro filed a motion to dismiss since there was no longer any controversy to consider. Ms. Vessal's evidence, written and oral fails, to support any showing of willful, purposeful or deceptive interference with her right to seek arbitration as a forum to resolve the disputes between the parties. The Panel finds no violation of FDCPA on the "arbitration" issue.

**(e) Niro did not obtain or attach an operative card agreement at the time of filing complaint and asked Claimant to send her copy which is evidence that Niro/Blatt failed to have meaningful involvement prior to filing the case such that no review of the merits was done.**

Ms. Vessal's claim, that no written card agreement was attached to the complaint, is argued as a violation of FDCPA § 1692g(d). She testified to that during the proceedings as well. Ms. Niro's response referenced the Illinois procedural rules stating that they do not require any contract to be attached since it was filed under the "account stated" theory. Ms. Vessal argues at length in the written summation that this method of litigation chosen by Ms. Niro is flawed given the circumstances in this case. The Panel finds that the arguments asserted by Ms. Vessal, e.g., that it may have been difficult for Ms. Niro to succeed in the litigation because procedural requirements could not be, i.e., there was no agreement that the statement of amount due was accurate and due and owing, is an issue that would have been litigated in the trial in Cook County or dealt with by motion. Ms. Niro may or may not have been successful in pursuing the claim by this methodology, but that does not translate into a FDCPA violation. The Panel does not find Ms. Vessal's legal argument persuasive on this issue and denies any relief sought under this theory.

7

Additionally, Ms. Vessal points to the card agreement issue as evidence that the law firm and/ or Ms. Niro failed to review the merits of the case before instituting litigation. The uncontroverted testimony of Ms. Niro detailed the procedures that were used in evaluating Ms. Vessal's matter. She reviewed the law firm's records with specificity as to what each entry meant, how information was obtained and verified. She reviewed all of the steps that were taken to assure compliance with FDCPA and all other consumer protection statues. She discussed in detail the consequences of the staff and the attorney's failing to comply with the very well known requirements of FDCPA, TILA, TCPA, Fair Credit Reporting Act, and consumer fraud statues. The Panel is convinced that Blatt and Ms. Niro complied with the required obligation to have attorney involvement to review the merits of the case before litigation is instituted. The Panel finds no 15 U.S.C. § 1692e violation for this issue.

In summary, the Panel has found that neither Blatt nor Ms. Niro have violated any portion of FDCPA under any theory expressly or implicitly claimed by Ms. Vessal.

## 2. TELEPHONE CONSUMER PROTECTION ACT (TCPA)

The Telephone Consumer Protection Act (TCPA) prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system...to any [cellular]telephone number." 47 U.S.C. 227(b)(1)(A)(iii). Ms. Vessal claims that both Citi and Blatt violated this act by calling her cell phone without her consent. Ms. Vessal has the burden of proving her claim. The evidence that she provided was her testimony that she never provided that number to Citi or to Blatt. She argues that prior written consent must be provided by the consumer before the cell phone can be accessed. The Respondents have submitted the Federal Communications Commission (FCC) ruling of January 4, 2008 that expressly allows autodialed and prerecorded message calls to wireless numbers that have been provided by the called party. This ruling was followed in *Greene v. DirectTV Inc.* 2010 WL 4628734 (N.D. Ill. 2010), which held that a number that is knowingly provided by the phone subscriber is considered express consent. Thus if the creditor shows that the number was provided by the recipient of the calls, there is no requirement of a writing or that specific permission to call that number be given.

Here, Ms. Vessal not only denies giving written consent but also denies ever having given her cell phone number to either Citi or Blatt. However, detailed testimony was offered by Mr. Steve Sabo, a Vice President of Citibank N.A., who testified from the business records for Ms. Vessal's account. It should be noted here that Ms. Vessal submitted substantial argument on the issue of whether or not the business records and/or Mr. Sabo's testimony should be considered. She argued that the documents did not meet the business record exception to the hearsay rule. Though this objection was not raised at the time of the hearing, the Panel however finds that the documentation provided in fact met the requirements. They were made in the course of a business; they were written at or near the time of the act, condition, or event (entered into the computer contemporaneously with the reporting of information); the witness was qualified to testify to the identity of the documents and the mode of its preparation; and

the sources of information and method and time of preparation were such that trustworthiness was established. Thus the Panel allows the testimony and written business records to be considered as evidence.

Mr. Sabo having authenticated the business records containing account notes and transaction or conversation data on Ms. Vessal's account established that she provided her cell phone number to Citibank. The notes indicated that a customer service representative received a call from Ms. Vessal on January 28, 2010 (Respondents' Exhibit A). The notes show that the caller was verified in terms of identity by way of security questions asked of the caller. It was established that the caller was Taraneh Vessal and during that call it was noted that she wanted to change her home number from 312-519-5649 to 312-933-8257. Ms. Vessal identified that 312-933-8257 is her cell phone number. Thus Ms. Vessal having provided the number meets the requirement of "express permission" and there can be no assertion of a TCPA violation.

Ms. Vessal also claims a violation against Blatt. On February 17, 2010 the evidence shows that Citi placed the account with Blatt for collection of the debt. Ms. Vessal's consent to Citi is also consent to Blatt. *Frausto v. IC Systems, Inc.*, 2011 WL 3704249 (N.D. Ill. 2011). "Third party debt collectors step into the shoes of the creditor on whose behalf they are recovering the debt." In addition, Blatt also received express consent to use the cell number before it was called. Ms. Niro testified from the Blatt account notes that two telephone numbers were in the system at the time of the account creation: 847-566-7230 (Respondents' Exhibit B: Blatt account notes line 005) and 312-933-8357 (account line 018). Blatt called only the 847-566-7230 for debt collection purposes on several dates between February 17, 2010 and May 24, 2010. (Blatt account lines 041,053,062,066,069,072,080, et seq., showing attempted calls). Ms. Niro testified that on May 17, 2010, a Blatt representative received a call from an individual that they were able to verify was Ms. Vessal. (lines 163-65). During that call Ms. Vessal provided the 312-933-8257, cell phone number. Ms. Niro explained that from the Blatt account, it could be noted that the cell phone number was verified as the new number and the old number though retained in the system, was removed from the main screen. There were no records of calls placed to the 7230 number after that date and only three calls were placed to the cell number and done so only after the number was provided by Ms. Vessal to Blatt.

Ms. Vessal offered no other persuasive evidence to dispute the above documented evidence. In her summation Ms. Vessal asserts "based on information and belief" that Blatt deliberately redacted internal notes to hide the calls placed to her cell phone. She claims that Citi and Blatt obtained her cell phone from entities that sell consumer information or through "skip tracing." These allegations do not rise to the level of believable evidence that is necessary to carry her burden of proof on these issues.

Lastly, Ms. Vessal states that most of the auto-dialed calls by Citi were placed using local, out of state and blocked numbers. She maintains that Citi intentionally spoofed the caller ID and manipulated the system to hide the identity of the caller. As a result she maintains that she was unable to block these calls and continued to receive them and be charged for them. She states that on one occasion when the call was identified as Citi, she returned the call and it was an individual, not Citi. She received a number of calls in September and October of 2009 from local and out of state area codes. They were unrecognizable to her. She asserts that it must have been Citi. Once again,

there is no proof that Citi acted in any such capacity. Without further evidence the Panel has no basis to decide that Citi engaged in these activities. The Panel can take judicial notice that the general population of cell phone subscribers, receive wrong number calls or calls from numbers that are unrecognizable to the recipient but it is not proof of anything nefarious or otherwise. The Panel finds no violation regarding TCPA violations under any of Ms. Vessal's theories.

## 3. FAIR CREDIT REPORTING ACT (FCRA)

Ms. Vessal claims that Citi and Blatt violated the Fair Credit Reporting Act (FCRA) by repeatedly accessing her credit report without justifiable reason with the intent to harass and intimidate her. FCRA allows access to credit reports under certain permissible uses. The reporting agency is allowed to furnish the report: "to a person which it has reason to believe intends to use the information in connection with a credit transaction ...or collection of an account of, the consumer." 15 U.S.C. §1681b(a)(3)(A). Both Citi and Blatt admitted accessing the reports but the evidence supports that it was for a permissible use, namely to collect on Ms.Vessal's account. None of the evidence supplied by Ms. Vessal supports the claim that the credit report accessing behavior was intended to be harassing or intimidating in nature. All reasonable inferences drawn from the evidence supports that the Respondents were following the requirements under the Act. Ms. Vessal claims that Citi would have its inquiries removed monthly instead of remaining on the report for 12 months. There was no factual evidence to support that allegation provided during the hearing, nor was any expert testimony offered to show how that action could be identified by looking at the report. Additionally, even if that fact were proven, it does not support the argument that Citi was accessing the report for harassment purposes and not for permissible ones. No relevant inferences can be drawn from such testimony.

Ms. Vessal's written summation contains several paragraphs regarding the accuracy of the report and the obligation of the CRA to investigate when information is challenged by the consumer regarding misstatements or inaccuracies. The credit reporting agencies are not parties to this action. It is clear that consumers are given a right of action against those who violate FCRA's provisions (right of action against willful violators, 15U.S.C. § 1681n; right of action against negligent violators, 15 U.S.C.1681o), that right of action is limited to claims against the credit reporting agency. The cause of action does not extend to the furnishers. 15 U.S.C. § 1681S-2(c). See, *Sanders v. Mountain America Federal Credit Union*, 689 F3d 1138 (10th Cir. 2012). There is an exception where the consumer claims a failure to investigate a disputed issue. Ms. Vessal has not claimed that she notified the CRA of inaccuracies but rather she claims that she called Citi at some point and challenged a $5000 advance. This is disputed by Citi and will be addressed, *infra*. Thus, there is no evidence to support any claim regarding any inaccuracies in her report since the CRA is not a party and since there was no claim that Ms. Vessal challenged the accuracy of the report at all.

The Panel finds that Ms. Vessal has failed to meet her burden of proof of any FCRA violations by either Blatt or Citi.

## 4. FEDERAL TRUTH IN LENDING ACT (TILA)

Ms. Vessal's claims against Citi for failures to disclose in violation of TILA are less precise in nature. The written summation does not specifically set out what documents or facts were not disclosed. Rather the summation lists a number of obligations that a creditor has but there is no reference to the facts in this case that indicate what Ms. Vessal contends was not disclosed. There is no dispute that Ms. Vessal received monthly statements. She does not challenge that. Ms. Vessal has complained repeatedly that the Respondents have failed to provide the original credit card agreement by either attaching it to the complaint or providing it in discovery. Ms. Vessal relied on a credit card agreement and pointed to it in support of the request to arbitrate. Clearly she was provided a copy of it during the course of the life of the credit card relationship and in fact she retained it. She cited testimony from Mr. Sabo that Citi was not required to maintain card applications after 7.5 years. It is unclear why this is relevant except Citi may be saying that they do not keep records from the beginning of the cardholders relationship and retain only what is necessary.

This card originated in 1988 having some connection with Sears. The evidence is quite clear that there have been many changes in the relationship and that disclosures were duly provided during the course of the life of the card. Similarly Ms. Vessal admits receiving monthly statements which includes the balance, interest rate, charges, fees etc. Ms. Vessal cites a TILA regulation (Z) that indicates that the creditor must maintain records for two years after the date the disclosures are required to be made or action is required to be taken. 12 C.F.R. § 202.12, requires a 25 month retention period after a creditor notifies an applicant of action taken on an application. The very citations used by Ms. Vessal, establishes that there is no requirement that Citi retain her original card agreement. Nothing in TILA requires that certain documents be presented in litigation in order to prevail.

Ms. Vessal relies on *Portfolio Acquisitions, LLC v. Feltman*, 909 NE 2d 876 (Ill App. Ct, 1st Dist., 3rd Div. 2009). It repeats a longstanding proposition that "each time a credit card is used, a separate contract is formed between the cardholder and bank. If an individual credit card transaction forms the basis for the existence of a contract, then creditor must either attach a copy of any documents that it alleges forms the basis for the contract or allege sufficient facts to establish the existence of a valid and enforceable agreement." Citibank has met this Court's analysis. They have alleged sufficient facts to establish the existence of a valid enforceable contract. This case is not addressing any TILA issues. Much of Ms. Vessal's citations are directed to identifying a contract, proving a contract exists, and deficiencies in the creditor's proofs. None of this relates to a TILA claim.

The Panel finds no violations of TILA by Citi.

## 5. ILLINOIS UNIFORM CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICE ACT

Ms. Vessal claims a number of violations of the Illinois Uniform Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1). The Panel notes that 815 ILCS 505/10b(1) states that the Act does not apply to "Actions or

transaction specifically authorized by law administered by any regulatory body or officer acting under statutory authority of this State or the United States. Citi is a bank and is highly regulated by federal statutes and regulations. The regulation of this industry is pre-empted by Federal statutory schemes. The claims against Citi cannot be challenged under the Illinois Act. The only claim asserted against Citi under this act is as follows:

**Citi did not honor the rates it offered and shortened the payment period and added hidden fees without notice. Fees were added even though the account was current and no purchases were made on the card.**

Though the Panel finds that the Federal law pre-empts this area, the Panel finds no proof this allegation. No evidence was produced to show the shortened time payment period or that hidden fees were assessed. Ms. Vessal's testimony was that she rarely, if ever looked at the monthly statements except to see what amount she owed.. That admissions makes it difficult for Ms. Vessal to argue that she was not given notice of changes in terms or other information that may have been helpful to her understanding of her rights. Nonetheless no proof was offered of shortened time periods or hidden fees.

Ms. Vessal asserts several violations of this Act against Ms. Niro and Blatt, as follows:

**1. Ms Niro and Blatt produced a Credit Card Agreement dated 2009 that was not the operative document.**

Ms. Vessal argues that her credit card agreement dates back to 1988 and the use of the 2009 card agreement was a violation because Ms. Niro used it only because it was "available" and "convenient." Ms. Vessal claims that this is an omission or concealment of a material fact and a violation of the Act. The Panel previously addressed this issue, which is intertwined with the fact that Citi is not required to keep all documentation for eternity but does so for 7.5 years. Ms. Niro testified the 1988 card agreement was not available to her. Since it would be Citi who would provide the documentation and since Mr. Sabo also testified that the earlier agreements were not available, there is no deceptive practice shown. Additionally, Ms. Vessal offered no case law to support that such would be a violation of the Act. The Panel finds that there is no sufficient showing of deceptive practice under these circumstances.

**2. Ms. Niro did not review the merits of the case before commencing litigation.**

This allegation was discussed previously and the Panel decided that Ms. Niro's testimony was persuasive on this issue and that the evidence showed that the proper attorney review occurred. There is no basis for a finding of a deceptive practice under this allegation.

**3. Ms. Niro represented to the Court that she did not timely receive Ms. Vessal's Appeal Brief when it had been timely served.**

Ms. Niro admittedly sent a letter to the Court that she had not timely received Ms. Vessal's brief and sought a dismissal of the Appeal. Ms. Niro admitted that though the brief was given to by her office later than the appropriate date, that Ms. Vessal had in fact timely filed and served the brief. Ms. Niro admitted that she had made a mistake but that there was no intent to misrepresent or deceive the Claimant. The issue on appeal was Ms. Vessal seeking to overturn the lower court's decision and having the case dismissed in favor of arbitration. Citi ultimately agreed but Ms. Vessal would not dismiss the appeal. Ms. Niro applied to the Court for dismissal since there was no longer

12

an issue in controversy. The Panel finds no violation of the Illinois Act. Ms. Niro made an error and ultimately Citi agreed to the very relief that Ms. Vessal sought.

### 4. Ms. Niro refused to engage in negotiations to settle the debt collection matter and other issues in dispute.

The Panel recalls no testimony regarding this issue except that there was little communication between the parties and that on one occasion, Ms. Niro attempted to speak to Ms. Vessal regarding settlement but Ms. Vessal would not engage. Generally, issues regarding settlement are not allowed into evidence and are not considered by the Courts or Arbitrators. Additionally, the issue of Ms. Vessal's letter offering settlement was not placed in evidence and cannot now be considered. Nonetheless the Panel finds no violation of the act regarding the settlement issue.

### 5. Ms. Niro and Blatt seeking counsel fees and costs is a deceptive act.

Ms. Vessal argues that the Respondents' seeking counsel fees and costs is tantamount to a deceptive practice. No case law has been cited that supports that contention. The counsel fee and cost issue is often raised in consumer issues and an application to a deciding tribunal is not usually a basis to support a deceptive practice claim. The fees and costs claim is for $525. Clearly the Respondents are not asking for the cost and expenses for the arbitration proceeding. There is a section of the 2004 Card Agreement entitled "Collection Costs," which indicates that if collection of the account is sent to a non-salaried lawyer, the cardholder may be liable for reasonable counsel fees and expenses of any legal action taken to the extent permitted by law. The Respondents point to this section in support of their claim. The Panel's decision regarding counsel fees and expenses is discussed, *infra.*, however given that there is an arguable basis to assert a counsel fee claim, the Panel finds that a counsel fee and expense application under these circumstances does not rise to a violation of the Illinois act.

## 6. FAIR BILLING ACT/BILLING ERRORS AND DISPUTES

The exact nature of Ms Vessal's claim against Citi for violating the Fair Billing Act, 15 U.S.C. § 1666(a) is unclear. The act does require the creditor to investigate an alleged billing error. However, the obligation is not triggered until the creditor receives a written notice of a dispute within 60 days of the sending of a statement to the consumer. The notice must identify the account in question, indicate the specific error and the consumer's reason as to why he/she believes there is an error. *Id.* There is no evidence that Ms. Vessal ever sent a written notice of a billing error. She did testify that she phoned a representative of Citi regarding the $5000 cash advance which she claimed she did not incur. The testimony was vague as to the date or circumstances of the call. She was clear, however, that Citi took no action to correct the alleged error and therefore argues that they did not fulfill their duty to investigate. Given that Ms. Vessal failed to comply with the requirements of the act and failed to comply with the provision of the card agreement of 2004 which also required a written notice, the Panel finds no violation of the Fair Billing Act on this issue.

A second area of violation may be Ms. Vessal's claim that she had closed her account in 2007 and then again in 2009. She maintains that when she paid the account down to zero, she closed the account. She did not offer any other evidence of

closing the account other than having paid the entire balance. The evidence provided by Mr. Sabo was that the account was not closed in 2007 but rather that it was not used for a couple of months. The Panel finds that the account was not closed. Since there was no specific portion of the act cited as a violation, the Panel cannot analyze this claim any further.

Lastly, there is a claim that Citi did not provide any statements prior to 2004. If this is claimed as a violation of the Fair Billing Act, the Panel has previously determined that Citi was not required to retain records for the life of the credit card history. The Panel finds no violation for the reasons previously stated.

### B. Citi's Claims:
### 1. CITI'S DEBT CLAIM

Ms. Vessal testified that she obtained the credit account in 1988. She signed an agreement at that time and continued to use the credit card on an ongoing basis. She had a credit card agreement of 2004 and used that agreement as the basis of her claim for arbitration. That card agreement set out certain obligations involving the use of the credit card, which she did on a continuous basis. She paid off her account in 2007 and did not use it for a few months. Thereafter she did use the account for cash advances. She closed the account in 2009 however with a balance owed. The proofs showed that there were often large balance transfers and cash withdrawals followed by required monthly payments.

Mr. Sabo established that Ms. Vessal received monthly statements. They were sent to Ms. Vessal's home address. These statements continued to be sent even after she stopped making payments. She made her last payment on September 22, 2009. After that last payment was applied the account showed a balance of $22,414.88. The account was then charged off in April 2010. The evidence showed that the balance on the last statement mailed to Ms. Vessal is the same as the balance Citi is seeing in its complaint, specifically, $23,659.65.

Ms. Vessal however disputes a balance transfer of $5000 that was made on April 21, 2009. She maintains that she did not make that transfer. She further argues that she contacted Citi by phone and asked for an investigation of this issue. Citi disputes this ever having occurred and points to the requirement that any billing error be addressed in writing as required by the card agreement and by the Fair Billing Act. The evidence is also clear, per Mr. Sabo's testimony, that Citi does not have a copy of the $5000 transfer. Though it has copies of all others, their records do not contain the document reflecting the $5000 transfer.

The Panel is satisfied that under well-established principles of contract law, Ms. Vessal is liable for the breach of contract. Citi could not meet its burden of proof where the document evidencing the $5000 transfer is not produced. Citi admitted that it could not produce the document and had no reasonable explanation for its not being available. Ms. Vessal did not lose her right to dispute the validity of the $5000 "charge" to her account even though she failed to show that she had given proper written notice of her claimed error. The fact that the Panel found no Fair Billing Act violation does not absolve Citi from meeting its burden to prove the accuracy of the account balance. Thus the Panel finds that Citi failed to prove the $5000 transfer.

The Panel does find that all other charges and transfers were proven by the evidence and that Citi met its burden of proof on the balance. There was an enforceable promise, a breach of that promise and damages. Ms. Vessal is liable under South Dakota's common law of account stated at least for $23,659.65 - $5000=$18,659.65. Technically there may be an additional minor amount of interest or fees related to the $5000 transfer that would further reduce the amount due, however, there is also additional interest that could be calculated from 2010. The Panel has determined that additional calculations are not warranted because they would prolong the proceedings and be of little benefit to Citi or Ms. Vessal to continue to pursue a recalculated amount and therefore find that the amount due Citi is $18,659.65.

## 2. CITI'S PETITION FOR ATTORNEY'S FEES

Citi's petition for attorney's fees is denied. Citi sought an award of counsel fees in the amount of $525. It is undisputed that the JAMS' Consumer Minimum Standards apply in this case. The standards provide that, "when a consumer initiates arbitration against the company,, the only fee required to be paid by the consumer is $250…All other costs must be borne by the company including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services."
In addition the 2004 agreement states under "Who Pays" that, "Each party will bear the expense of that parties attorneys, experts, and witnesses, and other expenses regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines."
The JAMS Consumer Minimum Standards do not deal with attorney's fees or pre-award interest. The JAMS Comprehensive Arbitration Rules, 24(g) states the Award of the Arbitrator may allocate attorney's fees and expenses and interest…if provided by the Parties' agreement or allowed by applicable law. Since this matter was resolved through arbitration., the Panel has decided that these provisions control. The other provision cited by Citi under the 2009 or 2004 card agreement entitled "Collection Costs" does indicate that if a lawyer (not salaried as a Citi employee) is referred the collection matter, the consumer is liable for attorney's fees costs and expense of any legal action to the extent permitted by law. However, no specific law has been cited to the Panel that would allow or require counsel fees to be awarded. The Panel has determined that since it is within the discretion of the arbitrator(s) to determine if attorney's fees should be awarded and since South Dakota law leaves the parties to their agreement on attorney's fees, SDCL §47-16-38, here with no other applicable law cited, the Panel declines to award attorney's fees.

## VII. AWARD

In this De Novo Appeal Proceeding, Ms. Vessal failed to prove any of her claims and is therefore awarded no relief on her claims. Citi is awarded $18,659.65 on its debt account claim. The Panel denies Citi's Petition for Attorney's Fees. This award

resolves all pending disputes between the parties

.

                                                                  _____/s/_____
                                                                  Hon. John J. Hughes, (Ret.)

                                                                _____/s/_____
                                                                  Hon. William D. Missouri, (Ret.)

                                                                _____/s/_____
                                                                  Hon. Maria M. Sypek, (Ret.)

Dated:  November 17, 2014

_____
Hon. John J. Hughes, (Ret.)

_____
Hon. William D. Missouri, (Ret.)

_____
Hon. Maria M. Sypek, (Ret.)

Dated:  November 17, 2014

_____
Hon. John J. Hughes, (Ret.)

_____
Hon. William D. Missouri, (Ret.)

_____
Hon. Maria M. Sypek, (Ret.)

Dated:  November 17, 2014

16

_____
Hon. John J. Hughes, (Ret.)

_____
Hon. William D. Missouri, (Ret.)

_____
Hon. Maria M. Sypek, (Ret.)

Dated:  November 17, 2014

16



## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Vessal, Taraneh - Appeal vs. Citibank (South Dakota) N.A.
Reference No. 1340010311

I, John J. Carr, not a party to the within action, hereby declare that on November 26, 2014 I served the attached Arbitrtion Appeal Final Award on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Boston, MASSACHUSETTS, addressed as follows:

Ms. Taraneh Vessal
P.O. Box 4764
Oak Brook, IL  60522-4764
Tel: 312-933-8257
Email: tvessal@sbcglobal.net
tvessal@aol.com
  Parties Represented:
  Taraneh Vessal

Iryna Martyniv Niro Esq.
Gregory R. Dye Esq.
Blatt, Hasenmiller, Leibsker & Moore
125 S. Wacker Drive
Suite 400
Chicago, IL  60606
Tel: 312-704-9440
Email: iniro@bhlmlaw.com
gdye@bhlmlaw.com
  Parties Represented:
  Citibank (South Dakota), N.A.

I declare under penalty of perjury the foregoing to be true and correct. Executed at Boston, MASSACHUSETTS on November 26, 2014.

John J. Carr
jcarr@jamsadr.com