A



# Demand for Arbitration Before JAMS

**TO RESPONDENT:** Citibank N.A.

(Name of the Party on whom Demand for Arbitration is made)

Address: 701 East 60th St North

City: Sioux Falls    State/Province: SD    Zip: 57104

Telephone: (605) 331-2626    Fax:    Email:

Representative/Attorney (if known): The Law offices of THOMPSON COBURN LLP

(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

Address: 55 East Monroe Street . 37th Floor

City: Chicago    State/Province: IL    Zip: 60603

Telephone: 312-346-7500    Fax: 312-580-2201    Email: trowden@thompsoncoburn.com

**Add more respondents on page 5.**

**FROM CLAIMANT (name):** Taraneh Vessal

Address: P.O. Box 4764

City: Oak Brook    State/Province: IL    Zip: 60522-4764

Telephone: 312-933-8257    Fax:    Email: tvessal@aol.com

Representative/Attorney of Claimant (if known): Self-Represented

(Name of the Representative/Attorney of the Party Demanding Arbitration)

Address:

City:    State/Province:    Zip:

Telephone:    Fax:    Email:

**Add more claimants on page 6.**

**Nature of Dispute:** Claimant hereby demands that you submit the following dispute to final and binding arbitration (a more detailed statement of the claim(s) may be attached).

Dispute: Consumer Arbitration



# Demand for Arbitration Before JAMS

**Arbitration Agreement:** This demand is made pursuant to the arbitration agreement which the parties made as follows (cite location of arbitration provision and attach two (2) copies of entire agreement).

Arbitration Provision Location: Citibank's card agreement Page 10,11,12

**Claim & Relief Sought By Claimant:** Claimant asserts the following claim and seeks the following relief (including amount in controversy, if applicable).

Claim: FDCPA, FCRA, TILA, Tort, State statues , IL Uniform Deceptive Trade Practices Act, IL Consumer Fraud Act, and any other IL Consumer Protection Acts , Damages for emotional distress, Punitive, Statutory and Actual Damages

Amount = $318,635.00

**Response:** Respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. Send the original response and counter-claim to the claimant at the address stated above with two (2) copies to JAMS.

**Request for Hearing:**

JAMS is requested to set this matter for hearing at: 72 South wacker Drive, Chicago, IL. 60603

(Preferred Hearing Location)

**Election For Expedited Procedures (Comprehensive Rule 16.1)**

☐ By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

Signed (Claimant): _____  Date: 5/11/2015
(may be signed by an attorney)

Type / Print Name: Taranch Vessal

**Please include a check payable to JAMS for the required initial, non-refundable $400 per party deposit to be applied toward your Case Management Fee and submit to your local JAMS Resolution Center.**



# Demand for Arbitration Before JAMS

**Add additional respondents below.**

**TO RESPONDENT 2:** The Law Offices of Blatt, Hasenmiller, Leibsker & Moore LLC
(Name of the Party on whom Demand for Arbitration is made)

Address: 10 South LaSalle St., Suite 2200

City: Chicago     State/Province: IL     Zip: 60603

Telephone: (312) 704-9440     Fax: (312) 704-9430     Email: iniro@bhlmlaw.com

Representative/Attorney (if known):
(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

Address:

City:     State/Province:     Zip:

Telephone:     Fax:     Email:


**TO RESPONDENT 3:** Iryna-Martyniv-Niro Esq.
(Name of the Party on whom Demand for Arbitration is made)

Address: 10 South LaSalle St., Suite 2200

City: Chicago     State/Province: IL     Zip: 60603

Telephone: (312) 704-9440     Fax: (312) 704-9430     Email: iniro@bhlmlaw.com

Representative/Attorney (if known):
(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

Address:

City:     State/Province:     Zip:

Telephone:     Fax:     Email:

Resolution Centers Worldwide ● 1.800.352.5267 ● www.jamsadr.com
(c) copyright 2014 JAMS. All rights reserved.



# Demand for Arbitration Before JAMS

## Add additional respondents below.

**TO RESPONDENT 2:** The Law Offices of Thompson Coburn LLP
*(Name of the Party on whom Demand for Arbitration is made)*

Address: 55 East Monroe Street , 37th Floor

City: Chicago State/Province: IL Zip: 60603

Telephone: (312) 346-7500 Fax: (312) 580-2201 Email: trowden@thompsoncoburn.com

Representative/Attorney (if known): Todd Rowden
*(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)*

Address:

City: State/Province: Zip:

Telephone: Fax: Email:

**TO RESPONDENT 3:**
*(Name of the Party on whom Demand for Arbitration is made)*

Address:

City: State/Province: Zip:

Telephone: Fax: Email:

Representative/Attorney (if known):
*(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)*

Address:

City: State/Province: Zip:

Telephone: Fax: Email:

**B**

Exhibit (1)

Defendant's
( Copy )
of Card
agreement

# CARD AGREEMENT

This document and the card carrier together make up your Card Agreement and throughout this document are referred to as Agreement or Card Agreement. The card carrier contains important account information, including your annual percentage rates and the amount of any membership fee. Please read and keep both the card carrier and this document for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words *you, your,* and *yours* mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word *card* means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words *we, us,* and *our* mean Citibank (South Dakota), N.A., the issuer of your account. The words *authorized user* mean any person to whom you give permission to use your account.

## *Using Your Account and Your Credit Line:*

The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your initial credit line appears on the card carrier. A portion of your credit line, called the cash advance limit, is available for cash advances. At our discretion, we may change your credit line or cash advance limit at any time. We will notify you of any new line or limit either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your credit line or cash advance limit by contacting Customer Service by telephone or mail. 

The full amount of your credit line is available to buy or lease goods or services wherever the card is honored. Your cash advance limit is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The total amount charged on your account, including purchases, balance transfers, cash advances, finance charges, fees, or other charges, must always remain below your credit line. However, if that total amount exceeds your credit line you must still pay us. We may approve transactions that cause you to exceed your credit line without waiving any of our rights under this Agreement.

**Additional Cards:**

**Membership Fee:**

**How We Determine the Balance:**

**Billing:**

**Annual Percentage Rates for Purchases and Cash Advances:**

**Variable Annual Percentage Rates for Purchases and Cash Advances:**

**Promotional Rate Offers:**

**Finance Charges:**

Defendant's (Copy)

Defendant's (Copy)

***Convenience Checks:***

Convenience checks may be used to purchase goods and services, to transfer balances from others, or to obtain funds up to the amount of your available cash advance limit unless that amount will cause the total balance to exceed your credit line. We will treat convenience checks as a cash advance and charge them against your cash advance limit. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this or any other Card Agreement that you have with us. We will not certify any convenience checks, nor will we return paid convenience checks.

***Returned Convenience Check Fee:***

We will add a $29 fee to the standard advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance limit or credit line, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

***Stop Payment Fee:***

We will add a $29 fee to the standard advance balance when payment of a convenience check is stopped at your request. You may stop payment on convenience checks by notifying us in writing at *P.O. Box 6500, Sioux Falls, South Dakota 57117*, or by calling us at the Customer Service telephone number listed on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order will remain in effect for six months unless renewed in writing.

Once a charge is made through the use of the card or account number we cannot "stop payment" on the charge. If there is a dispute involving a charge on your account, please refer to the section entitled "What To Do If There's An Error In Your Bill".

***Lost or Stolen Cards, Account Numbers, or Convenience and Balance Transfer Checks:***

If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling the Customer Service telephone number shown on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. Don't use the card, account number, or any checks after we've been notified, even if they are found or returned. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash

advances made after we've been notified of the loss or the theft. However, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

***Default:***

You default under this Agreement if you fail to pay, by its due date, the Minimum Amount Due listed on each billing statement; fail to make a payment to any other creditor when due; file for bankruptcy; exceed your credit line; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by automatic debit that is returned unpaid; or default under any other Card Agreement that you have with us. If you default, we may close your account and demand immediate payment of the total balance. If you have given us a security interest in a certificate of deposit, we may use the deposit amount to pay any amount you owe.

***Preauthorized Charges:***

If you default, if the card is lost or stolen, or we change your account or credit card number for any reason, we may suspend automatic charges for that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

***Collection Costs:***

If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

***ARBITRATION:***

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

***Agreement to Arbitrate:***

Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

Defendants Copy

*Claims Covered:*

• **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

• **Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

• **What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

• **Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

• **What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

*How Arbitration Works:*

• **How does a party initiate arbitration?** The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605
Web site: www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610
Web site: www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

• **What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

• **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if

the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

• **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

• **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

*Survival and Severability of Terms:*

• This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

*Credit Reporting:*

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when

Defendant 1 (Copy)

we review your account for a credit line increase). If you wish to know the names of the agencies we have contacted, write us at the Customer Service address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits the notice.

If you think we reported inaccurate information to a credit report-ing agency, write us at the Customer Service address listed on the billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit report-ing agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and notify you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**
From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**
You may close your account at any time by notifying us in writing. However, you remain responsible to pay the total balance according to the terms of this Agreement. We may close your account or sus-pend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**
We are not responsible if a transaction on your account is not accepted, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day; if we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**
We can change this Agreement, including all fees and the annual Percentage Rate, at any time for any reason. These reasons may be based on information in your credit report, such as that you have failed to make payment to another creditor, or based on competitive or market-related factors. These changes are binding on you. However, if the change will cause a fee, rate, or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the total balance, either at once or under the terms of the unchanged

Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obliga-tions under this Agreement to third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call the Customer Service telephone number shown on the billing statement. You can also call toll-free or for local Directory Assistance to get our telephone number.

Nan Stark
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

© 2003 Citibank (South Dakota), N.A.

Defendant Copy

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**

If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion of the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
- Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain to you why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported you. Once the matter has been settled between us, we must tell anyone we report you to that the matter has been settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right (not to pay the remaining amount due on the property or services). There are two limitations on this right:

- You must have made the purchase in your home state, or (if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

E00S(1TION Rev 0203 Pc 0503 8000s1

18

15

*Visa Agreement 2003*

Defendant's (Copy)

**Transaction Fee for Balance Transfers:**

**Transaction Fee for Cash Advances:**

**Minimum Finance Charge:**

**Credit Balance:**

**Security Interest for Secured Accounts:**

**Transactions Made In Foreign Currencies:**

**Minimum Amount Due:**

**Payments:**

**One-time Credit-Line Fee:**

**Late Fees:**

**Returned Payment Fee:**

**Balance Transfer Checks:**

C

TARANEH VESSAL

              Claimant,

   v.

CITIBANK (SOUTH DAKOTA), N.A.,
BLATT, HASENMILLER, LEIBSKER &
MOORE, LLC, and IRYNA MARTYNIV NIRO, ESQ.,

         Respondents

JAMS
ARBITRATION APPEAL

Case No.  1340010311

---

## ARBITRATION APPEAL FINAL AWARD

---

### CLAIMANT, SELF-REPRESENTED

Taraneh Vessal, Pro Se
P.O. Box 4764
Oak Brook, Illinois 60522-4764
Telephone: 312-933-8257

### COUNSEL FOR RESPONDENTS

Gregory R. Dye, Esq.
Blatt, Hasenmiller, Leibsker & Moore
125 S. Wacker Drive
Suite 400
Chicago, IL  60606
Telephone: 312-704-9440
Fax: 312-704-9430

Iryna Martyniv Niro, Esq.
Blatt, Hasenmiller, Leibsker & Moore
125 S. Wacker Drive
Suite 400

1

Chicago, IL 60606
Telephone: 312-704-9440
Fax: 312-704-9430

ARBITRATION APPEAL PANEL

Hon. John J. Hughes, (Retired)
JAMS
1717 Arch St., Suite 3810
Philadelphia, PA 19103
Telephone: 215-246-9494
Fax: 215-246-0940

Hon. William D. Missouri, (Retired)
JAMS
6411 Ivy Lane
Greenbelt, MD 20770
Telephone: 301-441-3366

Hon. Maria M. Sypek, (Retired)
JAMS
1717 Arch St., Suite 3810
Philadelphia, PA 19103
Telephone: 215-246-9494
Fax: 215-246-0940


CASE MANAGER

Mr. John Carr
One Beacon Street, Suite 2210
Boston, MA 02108-3106
Telephone: 617-228-0200


## I. PARTIES and COUNSEL

Claimant, Taraneth Vessal is from Oak Brook, Illinois and is self-represented. Citibank (South Dakota), N.A. (hereafter referred to as "Citi" or "Respondent") is a corporation. Blatt, Hasenmiller, Leibsker & Moore, LLC, (hereafter referred to as "Blatt") is a law firm located in Chicago Illinois. Iryna Martyniv Niro is an attorney associated with the Blatt law firm. Mr. Richard R. Dye and Ms. Iryna Martyniv Niro of the Blatt law firm represented all of the Respondents.

2

## II.  ARITRATION PANEL

The Appeal Panel Members ("The Panel") are  Hon. John J. Hughes, (Ret.), JAMS, Philadelphia PA; Hon. William D. Missouri, (Ret.), JAMS, Greenbelt, Maryland; and Hon. Maria M. Sypek, (Ret.), JAMS, Philadelphia, PA.  All of the Arbitrators are neutral.

## III.  ARBITRATION AGREEMENT AND RULES and APPLICABLE LAW

It has been previously ruled, as a result of a Motion to apply the JAMS Optional Arbitration Appeal Procedure pursuant to the JAMS Comprehensive Arbitration Rules and Procedure Rule 34 filed by the Respondents, that the arbitration appeal be governed by the Card Agreement, specifically by the terms under "When is an arbitration award final."  The JAMS Comprehensive Arbitration Rules and Procedures otherwise apply as well as the JAMS Consumer Minimum Standards.  Pursuant to the Card Agreement, the substantive law of South Dakota is controlling on the issues raised by the Respondent re: the Claimant's debt.  Illinois procedural law is applied where necessary when procedural matters are relevant to the original litigation filed by Citi in the Illinois State Court system.

## IV.  SUMMARY OF CLAIMS, COUNTERCLAIMS and RESPONSES

Ms. Vessal's Complaint alleges violations of the Fair Debt Collection Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2 et. seq., Uniform Deceptive Trades and Practices Act 815 § 510 et seq., Truth in Lending Act 15 U.S.C. § 1601 et seq. (TILA), Telephone Consumer Protection Act (TCPA) 47 U.S.C. § 227 et seq., Banks and Banking Act 12 C.F.R. 225 et seq., and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Damages, including statutory, actual, and punitive as available under the above acts and statutes are sought against all Respondents jointly and severally.  Essentially Claimant Vessal maintains that the Respondents used unfair and unlawful tactics and harassing behaviors in their efforts to collect a credit card debt which resulted from the use of the credit card for cash advances.

The Respondents deny violating any of the above statutes and assert by way of a counterclaim (essentially the allegations contained in the original litigation and the counterclaim in the original arbitration since no counterclaim was actually filed in the within appeal, see Procedural History, *infra*.) for the balance due on the account in the amount of $23,659.65.

## V.  PROCEDURAL HISTORY

This matter was initially filed by Citi against Taraneh Vessel under the caption, Citibank (South Dakota) N.A. v. Taraneh Vessal, Case No 10M1 132741 in the Circuit Court of Cook County, Illinois, Municipal Department, First District, Cook

3

## II. ARITRATION PANEL

The Appeal Panel Members ("The Panel") are Hon. John J. Hughes, (Ret.), JAMS, Philadelphia PA; Hon. William D. Missouri, (Ret.), JAMS, Greenbelt, Maryland; and Hon. Maria M. Sypek, (Ret.), JAMS, Philadelphia, PA. All of the Arbitrators are neutral.

## III. ARBITRATION AGREEMENT AND RULES and APPLICABLE LAW

It has been previously ruled, as a result of a Motion to apply the JAMS Optional Arbitration Appeal Procedure pursuant to the JAMS Comprehensive Arbitration Rules and Procedure Rule 34 filed by the Respondents, that the arbitration appeal be governed by the Card Agreement, specifically by the terms under "When is an arbitration award final." The JAMS Comprehensive Arbitration Rules and Procedures otherwise apply as well as the JAMS Consumer Minimum Standards. Pursuant to the Card Agreement, the substantive law of South Dakota is controlling on the issues raised by the Respondent re: the Claimant's debt. Illinois procedural law is applied where necessary when procedural matters are relevant to the original litigation filed by Citi in the Illinois State Court system.

## IV. SUMMARY OF CLAIMS, COUNTERCLAIMS and RESPONSES

Ms. Vessal's Complaint alleges violations of the Fair Debt Collection Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2 et. seq., Uniform Deceptive Trades and Practices Act 815 § 510 et seq., Truth in Lending Act 15 U.S.C. § 1601 et seq. (TILA), Telephone Consumer Protection Act (TCPA) 47 U.S.C. § 227 et seq., Banks and Banking Act 12 C.F.R. 225 et seq., and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Damages, including statutory, actual, and punitive as available under the above acts and statutes are sought against all Respondents jointly and severally. Essentially Claimant Vessal maintains that the Respondents used unfair and unlawful tactics and harassing behaviors in their efforts to collect a credit card debt which resulted from the use of the credit card for cash advances.

The Respondents deny violating any of the above statutes and assert by way of a counterclaim (essentially the allegations contained in the original litigation and the counterclaim in the original arbitration since no counterclaim was actually filed in the within appeal, see Procedural History, *infra*.) for the balance due on the account in the amount of $23,659.65.

## V. PROCEDURAL HISTORY

This matter was initially filed by Citi against Taraneh Vessal under the caption, Citibank (South Dakota) N.A. v. Taraneh Vessal, Case No 10M1 132741 in the Circuit Court of Cook County, Illinois, Municipal Department, First District, Cook

3

County on April 19, 2010, seeking $23,659.65 plus costs. The return date was set for May 24, 2010. Ms. Vessal filed an answer on November 23, 2010. On November 29 2010 a motion to dismiss the complaint and have the matter resolved in an arbitration proceeding per Citibank's Credit Card Agreement was filed by Ms. Vessal. This motion was opposed by Ms.Niro and the Court denied the motion to dismiss. Ms. Vessal filed an appeal of that order including a brief in support of the appeal. Ms. Niro filed a motion to dismiss the appeal initially claiming that Ms. Vessal failed to timely serve her brief. However that appeared to be an error. Nonetheless, Ms. Niro thereafter agreed to arbitration and asked Ms. Vessal to enter an agreement to dismiss the appeal. Ms. Vessal would not agree. However the Court dismissed the appeal and incorrectly sent the matter to a court mandated arbitration program. That referral was ultimately corrected. Ms. Vessal filed a request for Arbitration through the JAMS offices in Chicago, IL. The original complaint was filed with JAMS on July 2, 2012. The matter was given Case No. 1340008324 and the hearing was conducted on March 12, 2013. The Final Award was dated June 14, 2013 and was received by the Claimant on June 27, 2013. On that same date Ms. Vessal filed a Notice of Election of the Arbitration Award and Appeal per Terms of Citibank's Contract. A "Complaint" was filed by the Claimant on December 9, 2013.

On April 4, 2014 an initial Case Management conference call was held with all parties, the Panel and JAMS case managers. It was determined that the Respondents would file a motion asserting that the JAMS Optional Arbitration Appeal Procedure be used in lieu of the format contained in Citibank's Agreement. A motion schedule was fixed. As a result the Panel by an Order dated, June 10, 2014, denied Citi's application and ordered that the matter proceed under the Card Agreement before the three Judge Panel with all evidence considered anew.

Ms. Vessal also made a motion for the Panel members to recuse themselves because the original Arbitrator's Final Award had been forwarded to them. This motion was denied in the same order of the Panel that resolved the arbitration format issue. Additionally, the Claimant made a motion to bar any *ex parte* communications between the JAMS administrative offices and/or the Panel with the Respondents to the exclusion of the Claimant. It was resolved in the conference call of June 20, 2014 and memorialized in Scheduling Order No. 2 dated July 1, 2014, that there would be no such *ex parte* communications.

Other motions were made concerning discovery deficiencies and were resolved by an oral decision. A motion *in limine* was filed by Ms. Vessal, seeking to strike any debt claim of the Respondent's because they failed to file a counterclaim in the appeal forum. This motion was denied on September 11, 2014 in a written decision. A motion for reconsideration was also filed by Ms. Vessal on the counterclaim issue and was denied on September 12, 2014. Neither party requested a stenographic record. The Arbitration hearing was conducted in Chicago, IL on September 16, 2014. The parties coordinated the specific issues that were to be decided and provided a handwritten list to the Panel on September 16, 2014. The parties provided simultaneously written submissions on October 17, 2014. The Final Arbitration Panel Award is due on November 17, 2014.

4

## VI. OPINION

### A. Taraneh Vessal's Claims:

#### 1. FAIR DEBT COLLECTION PRACTICES ACT.

The Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq. (FDCPA is the first statute that Ms. Vessal claims was violated by many practices of the Blatt law firm and Ms. Niro. Ms Vessal clearly worked very diligently to gather a number of consumer protection statutes that she maintains were violated. Her work is very extensive but is presented in a format that makes it difficult to determine which specific statute is being violated by which specific action. The parties agreed to a final list of issues that were in contention. This list was created by agreement between the parties at the conclusion of the hearing. The Respondents' written summation comports to the signed list of issues. The Claimant's submission unfortunately does not.

This "Opinion" will address the issues the parties agreed were in the case and will not consider anything that was not part of the Arbitration Hearing. If the Award fails to address any issue, claim, assertion or material contained in either party's summations, it is to be assumed that the Panel has decided that those issues are not relevant or material and have no significant merit. The list includes: 1) FDCPA vs. Blatt & Niro; 2) TCPA vs. Citi & Blatt; 3) Fair Credit reporting vs. Citi & Blatt (inaccurate reporting int. & rate; 4) TILA inaccurate int. & rate/& no agreement vs. Citi; 5) IL Consumer laws—Consumer Fraud & Uniform Deceptive Practices Acts against All; 6) Fair Billing; 7) Balance.

Note that the Panel has determined that the burden of proof necessary to prove the issues is proof by a "preponderance of the evidence." This burden of proof requires that the party asserting the claim must show that it is more likely true than not true that the matter or fact exists. The Panel will use this burden of proof throughout the Award when assessing the evidence.

FDCPA contains a statute of limitations that requires that any action be brought within one year from the date on which the violation occurs. 15 U.S.C.1692 k(d). Ms. Vessal filed her complaint on July 2, 2012 in the original JAMS arbitration matter, therefore any claims that are asserted to have occurred before July 2, 2011 are time barred. Ms. Vessal did not address this issue in her summation nor did she address it at the hearing. Mr. Dye presented this very issue in his opening. Ms. Vessal did not present any evidence that met this defense nor did she provide any argument or factual support that the statute was tolled in any way for any reason. As a result the asserted violations are time barred. The Panel will nonetheless address the merits of the issues raised for completeness.

##### (a) Blatt Law Firm failed to send an initial demand letter.

Ms. Vessal maintained that Blatt violated FDCPA by failing to send a letter before litigation was commenced. Ms.Niro testified clearly that the demand letter was mailed to Claimant on February 22, 2010. (Respondent's Exhibit B, line 036). Note

that this claim is clearly time barred. Though Ms. Vessal made no argument that the successive litigation or arbitration refreshes the FDCPA violations, case law does not support such an argument. See, *Calka v. Kicker, Craus & Bruh, LLP,* 1998 WL 437151 9S.D.N.Y. 1998). To the merits however, Ms. Vessel stated that the first communication she had from Blatt was a letter saying "a lawsuit has been filed against you" dated May 13, 2010. (Claimant's Exhibit B of Previously submitted Exhibits 12/9/13). However, Respondents through the testimony of Ms. Niro, clearly established that the initial letter was sent. The records of the law firm show that the demand letter was sent and that it was fully compliant with FDCPA requirements. The testimony showed that it was mailed to Ms. Vessal's address on February 22, 2010. This is sufficient proof. Receipt of the letter is not required by FDCPA. As a result, the Claimant has failed to meet the burden of proof required to support a violation of FDCPA on this issue.

**(b) Blatt did not identify itself as a debtor collector on voicemail messages/prank calls to cell phone.**

Blatt agrees that telephone calls were made to Ms. Vessal on May 24, June 3, and June 11, 2010. (Respondent's Exhibit B lines 183, 191 and 208). To pursue violatons for these calls a complaint would need to be filed on or before June 11, 2010 at the latest. No complaint was filed until July 2, 2012. Thus any claim is now time barred. Addressing the merits of the Claimant's allegation, she maintains that Blatt did not disclose its real identity when it left a voicemail. FDCPA requires that a debt collector identify himself as a debt collector, inform the consumer that the communication is an attempt to collect a debt and any information obtained will be used for that purpose. 15 U.S.C.1692e(11). Ms. Vessal provided two voicemails. There were no dates attached and one is only part of the message. The other is complete and though it cannot be clearly identified as a call from Blatt, the testimony maintained that the call as heard was fully compliant with FDCPA and would be the type of call that Blatt would have made. The caller identified himself by name, said he was a debt collector, identified the consumer who was the intended recipient of the call, and provided mini Miranda disclosures. There is no other evidence provided by Ms. Vessal in support of a violation of FDCPA. Since Claimant has the burden of proof, the claim fails on its merits as well as being time barred.

**(c) Blatt added collection costs to the account and sent a "Bill" while account was in litigation.**

Ms. Vessal asserts a violation of FDCPA because she received a letter dated December 15, 2010 (Claimant Ex. E of Previously Submitted Documents) which actually was a cover letter enclosing the Order that was entered on December 8, 2013 by the Court. It states nothing further other than the fact that the Order is enclosed. The letter contains references at the top of the letter indicating the following: creditor, type, reference #, account# (last four digits), balance due, debtor, case number. It is unclear what Ms. Vessal's complaint is except that it may be that after "Balance Due" the amount stated is "24116.65." The letter itself does not seek that amount. The testimony from Ms. Niro was that the account balance includes what Blatt's expenses include. It references what Blatt is also billing the client as well as the debt amount. The cost is not added to the balance being sought from Ms. Vessel. It is the amount Citi has not been paid plus expenses that have been incurred. Since the content of this letter did not seek that

6

amount nor did it seek any amount, the Panel finds that there is no evidence that Blatt was using "unfair or unconscionable means to collect or attempt to collect any debt." Ms vessel cites 15 U.S.C. § 1692f(1) in support of her claim which requires that interest, fees, and other charges would be unconscionable or unfair conduct if sought when not "expressly authorized by the agreement creating the debt or permitted by law." Since the content of the letter had nothing to do with seeking any balance due, there is no violation.

Lastly it should be noted that this issue is also time barred by the one year statute of limitations since the letter is dated December 15, 2010 and the complaint was filed on July 2, 2012.

**(d) Blatt and Niro willfully attempted to preclude arbitration.**

Ms. Vessal maintained that the Blatt law firm through Ms. Niro's actions, committed deceptive acts in violation of FDCPA by refusing to agree to Ms. Vessal's request for arbitration. This allegation is intertwined with the allegation that an incorrect, non-controlling agreement was provided by Niro in response to Ms. Vessal's motion to dismiss in favor of arbitration. When presented with Ms. Vessal's motion to dismiss and the opposition thereto, the Cook County Circuit Judge Panarese ruled in favor of Citi on this issue and denied Ms. Vessal's motion. Ms. Niro testified during the arbitration hearing, that she interpreted the agreement to offer a choice of arbitration or litigation. Apparently, the Court agreed with her analysis. Given that the Court agreed with counsel, there is support for Ms. Niro's testimony that she was not engaging in deceptive practices. The matter was then, appealed by Ms. Vessal. Ultimately, Citi agreed to the arbitration. Ms. Vessal would not agree to dismiss the appeal. Ms. Niro filed a motion to dismiss since there was no longer any controversy to consider. Ms. Vessal's evidence, written and oral fails, to support any showing of willful, purposeful or deceptive interference with her right to seek arbitration as a forum to resolve the disputes between the parties. The Panel finds no violation of FDCPA on the "arbitration" issue.

**(e) Niro did not obtain or attach an operative card agreement at the time of filing complaint and asked Claimant to send her copy which is evidence that Niro/Blatt failed to have meaningful involvement prior to filing the case such that no review of the merits was done.**

Ms. Vessal's claim, that no written card agreement was attached to the complaint, is argued as a violation of FDCPA § 1692g(d). She testified to that during the proceedings as well. Ms. Niro's response referenced the Illinois procedural rules stating that they do not require any contract to be attached since it was filed under the "account stated" theory. Ms. Vessal argues at length in the written summation that this method of litigation chosen by Ms. Niro is flawed given the circumstances in this case. The Panel finds that the arguments asserted by Ms. Vessal, e.g., that it may have been difficult for Ms. Niro to succeed in the litigation because procedural requirements could not be, i.e., there was no agreement that the statement of amount due was accurate and due and owing, is an issue that would have been litigated in the trial in Cook County or dealt with by motion. Ms. Niro may or may not have been successful in pursuing the claim by this methodology, but that does not translate into a FDCPA violation. The Panel does not find Ms. Vessal's legal argument persuasive on this issue and denies any relief sought under this theory.

Additionally, Ms. Vessal points to the card agreement issue as evidence that the law firm and/or Ms. Niro failed to review the merits of the case before instituting litigation. The uncontroverted testimony of Ms. Niro detailed the procedures that were used in evaluating Ms. Vessal's matter. She reviewed the law firm's records with specificity as to what each entry meant, how information was obtained and verified. She reviewed all of the steps that were taken to assure compliance with FDCPA and all other consumer protection statues. She discussed in detail the consequences of the staff and the attorney's failing to comply with the very well known requirements of FDCPA, TILA, TCPA, Fair Credit Reporting Act, and consumer fraud statues. The Panel is convinced that Blatt and Ms. Niro complied with the required obligation to have attorney involvement to review the merits of the case before litigation is instituted. The Panel finds no 15 U.S.C. § 1692e violation for this issue.

In summary, the Panel has found that neither Blatt nor Ms. Niro have violated any portion of FDCPA under any theory expressly or implicitly claimed by Ms. Vessal.

## 2. TELEPHONE CONSUMER PROTECTION ACT (TCPA)

The Telephone Consumer Protection Act (TCPA) prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system...to any [cellular]telephone number." 47 U.S.C. 227(b)(1)(A)(iii). Ms. Vessal claims that both Citi and Blatt violated this act by calling her cell phone without her consent. Ms. Vessal has the burden of proving her claim. The evidence that she provided was her testimony that she never provided that number to Citi or to Blatt. She argues that prior written consent must be provided by the consumer before the cell phone can be accessed. The Respondents have submitted the Federal Communications Commission (FCC) ruling of January 4, 2008 that expressly allows autodialed and prerecorded message calls to wireless numbers that have been provided by the called party. This ruling was followed in *Greene v. DirectTV Inc.* 2010 WL 4628734 (N,D. Ill. 2010), which held that a number that is knowingly provided by the phone subscriber is considered express consent. Thus if the creditor shows that the number was provided by the recipient of the calls, there is no requirement of a writing or that specific permission to call that number be given.

Here, Ms. Vessal not only denies giving written consent but also denies ever having given her cell phone number to either Citi or Blatt. However, detailed testimony was offered by Mr. Steve Sabo, a Vice President of Citibank N.A., who testified from the business records for Ms. Vessal's account. It should be noted here that Ms. Vessal submitted substantial argument on the issue of whether or not the business records and/or Mr. Sabo's testimony should be considered. She argued that the documents did not meet the business record exception to the hearsay rule. Though this objection was not raised at the time of the hearing, the Panel however finds that the documentation provided in fact met the requirements. They were made in the course of a business; they were written at or near the time of the act, condition, or event (entered into the computer contemporaneously with the reporting of information); the witness was qualified to testify to the identity of the documents and the mode of its preparation; and

the sources of information and method and time of preparation were such that trustworthiness was established. Thus the Panel allows the testimony and written business records to be considered as evidence.

 Mr. Sabo having authenticated the business records containing account notes and transaction or conversation data on Ms. Vessal's account established that she provided her cell phone number to Citibank. The notes indicated that a customer service representative received a call from Ms. Vessal on January 28, 2010 (Respondents' Exhibit A). The notes show that the caller was verified in terms of identity by way of security questions asked of the caller. It was established that the caller was Taraneh Vessal and during that call it was noted that she wanted to change her home number from 312-519-5649 to 312-933-8257. Ms. Vessal identified that 312-933-8257 is her cell phone number. Thus Ms. Vessal having provided the number meets the requirement of "express permission" and there can be no assertion of a TCPA violation.

 Ms. Vessal also claims a violation against Blatt. On February 17, 2010 the evidence shows that Citi placed the account with Blatt for collection of the debt. Ms. Vessal's consent to Citi is also consent to Blatt. *Frausto v. IC Systems, Inc.*, 2011 WL 3704249 (N.D. Ill. 2011). "Third party debt collectors step into the shoes of the creditor on whose behalf they are recovering the debt." In addition, Blatt also received express consent to use the cell number before it was called. Ms. Niro testified from the Blatt account notes that two telephone numbers were in the system at the time of the account creation: 847-566-7230 (Respondents' Exhibit B: Blatt account notes line 005) and 312-933-8357 (account line 018). Blatt called only the 847-566-7230 for debt collection purposes on several dates between February 17, 2010 and May 24, 2010. (Blatt account lines 041,053,062,066,069,072,080, et seq., showing attempted calls). Ms. Niro testified that on May 17, 2010, a Blatt representative received a call from an individual that they were able to verify was Ms. Vessal. (lines 163-65). During that call Ms. Vessal provided the 312-933-8257, cell phone number. Ms. Niro explained that from the Blatt account, it could be noted that the cell phone number was verified as the new number and the old number though retained in the system, was removed from the main screen. There were no records of calls placed to the 7230 number after that date and only three calls were placed to the cell number and done so only after the number was provided by Ms. Vessal to Blatt.

 Ms. Vessal offered no other persuasive evidence to dispute the above documented evidence. In her summation Ms. Vessal asserts "based on information and belief" that Blatt deliberately redacted internal notes to hide the calls placed to her cell phone. She claims that Citi and Blatt obtained her cell phone from entities that sell consumer information or through "skip tracing." These allegations do not rise to the level of believable evidence that is necessary to carry her burden of proof on these issues.

 Lastly, Ms. Vessal states that most of the auto-dialed calls by Citi were placed using local, out of state and blocked numbers. She maintains that Citi intentionally spoofed the caller ID and manipulated the system to hide the identity of the caller. As a result she maintains that she was unable to block these calls and continued to receive them and be charged for them. She states that on one occasion when the call was identified as Citi, she returned the call and it was an individual, not Citi. She received a number of calls in September and October of 2009 from local and out of state area codes. They were unrecognizable to her. She asserts that it must have been Citi. Once again,

there is no proof that Citi acted in any such capacity. Without further evidence the Panel has no basis to decide that Citi engaged in these activities. The Panel can take judicial notice that the general population of cell phone subscribers, receive wrong number calls or calls from numbers that are unrecognizable to the recipient but it is not proof of anything nefarious or otherwise. The Panel finds no violation regarding TCPA violations under any of Ms. Vessal's theories.

## 3. FAIR CREDIT REPORTING ACT (FCRA)

Ms. Vessal claims that Citi and Blatt violated the Fair Credit Reporting Act (FCRA) by repeatedly accessing her credit report without justifiable reason with the intent to harass and intimidate her. FCRA allows access to credit reports under certain permissible uses. The reporting agency is allowed to furnish the report: "to a person which it has reason to believe intends to use the information in connection with a credit transaction ...or collection of an account of, the consumer." 15 U.S.C. §1681b(a)(3)(A). Both Citi and Blatt admitted accessing the reports but the evidence supports that it was for a permissible use, namely to collect on Ms.Vessal's account. None of the evidence supplied by Ms. Vessal supports the claim that the credit report accessing behavior was intended to be harassing or intimidating in nature. All reasonable inferences drawn from the evidence supports that the Respondents were following the requirements under the Act. Ms. Vessal claims that Citi would have its inquiries removed monthly instead of remaining on the report for 12 months. There was no factual evidence to support that allegation provided during the hearing, nor was any expert testimony offered to show how that action could be identified by looking at the report. Additionally, even if that fact were proven, it does not support the argument that Citi was accessing the report for harassment purposes and not for permissible ones. No relevant inferences can be drawn from such testimony.

Ms. Vessal's written summation contains several paragraphs regarding the accuracy of the report and the obligation of the CRA to investigate when information is challenged by the consumer regarding misstatements or inaccuracies. The credit reporting agencies are not parties to this action. It is clear that consumers are given a right of action against those who violate FCRA's provisions (right of action against willful violators, 15U.S.C. § 1681n; right of action against negligent violators, 15 U.S.C.1681o), that right of action is limited to claims against the credit reporting agency. The cause of action does not extend to the furnishers. 15 U.S.C. § 1681S-2(c). See, *Sanders v. Mountain America Federal Credit Union*, 689 F3d 1138 (10th Cir. 2012). There is an exception where the consumer claims a failure to investigate a disputed issue. Ms. Vessal has not claimed that she notified the CRA of inaccuracies but rather she claims that she called Citi at some point and challenged a $5000 advance. This is disputed by Citi and will be addressed, *infra*. Thus, there is no evidence to support any claim regarding any inaccuracies in her report since the CRA is not a party and since there was no claim that Ms. Vessal challenged the accuracy of the report at all.

The Panel finds that Ms. Vessal has failed to meet her burden of proof of any FCRA violations by either Blatt or Citi.

### 4. FEDERAL TRUTH IN LENDING ACT (TILA)

Ms. Vessal's claims against Citi for failures to disclose in violation of TILA are less precise in nature. The written summation does not specifically set out what documents or facts were not disclosed. Rather the summation lists a number of obligations that a creditor has but there is no reference to the facts in this case that indicate what Ms. Vessal contends was not disclosed. There is no dispute that Ms. Vessal received monthly statements. She does not challenge that. Ms. Vessal has complained repeatedly that the Respondents have failed to provide the original credit card agreement by either attaching it to the complaint or providing it in discovery. Ms. Vessal relied on a credit card agreement and pointed to it in support of the request to arbitrate. Clearly she was provided a copy of it during the course of the life of the credit card relationship and in fact she retained it. She cited testimony from Mr. Sabo that Citi was not required to maintain card applications after 7.5 years. It is unclear why this is relevant except Citi may be saying that they do not keep records from the beginning of the cardholders relationship and retain only what is necessary.

This card originated in 1988 having some connection with Sears. The evidence is quite clear that there have been many changes in the relationship and that disclosures were duly provided during the course of the life of the card. Similarly Ms. Vessal admits receiving monthly statements which includes the balance, interest rate, charges, fees etc. Ms. Vessal cites a TILA regulation (Z) that indicates that the creditor must maintain records for two years after the date the disclosures are required to be made or action is required to be taken. 12 C.F.R. § 202.12, requires a 25 month retention period after a creditor notifies an applicant of action taken on an application. The very citations used by Ms. Vessal, establishes that there is no requirement that Citi retain her original card agreement. Nothing in TILA requires that certain documents be presented in litigation in order to prevail.

Ms. Vessal relies on *Portfolio Acquisitions, LLC v. Feltman*, 909 NE 2d 876 (Ill App. Ct, 1st Dist., 3rd Div. 2009). It repeats a longstanding proposition that "each time a credit card is used, a separate contract is formed between the cardholder and bank. If an individual credit card transaction forms the basis for the existence of a contract, then creditor must either attach a copy of any documents that it alleges forms the basis for the contract or allege sufficient facts to establish the existence of a valid and enforceable agreement." Citibank has met this Court's analysis. They have alleged sufficient facts to establish the existence of a valid enforceable contract. This case is not addressing any TILA issues. Much of Ms. Vessal's citations are directed to identifying a contract, proving a contract exists, and deficiencies in the creditor's proofs. None of this relates to a TILA claim.

The Panel finds no violations of TILA by Citi.

### 5. ILLINOIS UNIFORM CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICE ACT

Ms. Vessal claims a number of violations of the Illinois Uniform Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1). The Panel notes that 815 ILCS 505/10b(1) states that the Act does not apply to "Actions or

transaction specifically authorized by law administered by any regulatory body or officer acting under statutory authority of this State or the United States. Citi is a bank and is highly regulated by federal statutes and regulations. The regulation of this industry is pre-empted by Federal statutory schemes. The claims against Citi cannot be challenged under the Illinois Act. The only claim asserted against Citi under this act is as follows:

**Citi did not honor the rates it offered and shortened the payment period and added hidden fees without notice. Fees were added even though the account was current and no purchases were made on the card.**

Though the Panel finds that the Federal law pre-empts this area, the Panel finds no proof this allegation. No evidence was produced to show the shortened time payment period or that hidden fees were assessed. Ms. Vessal's testimony was that she rarely, if ever looked at the monthly statements except to see what amount she owed.. That admissions makes it difficult for Ms. Vessal to argue that she was not given notice of changes in terms or other information that may have been helpful to her understanding of her rights. Nonetheless no proof was offered of shortened time periods or hidden fees.

Ms. Vessal asserts several violations of this Act against Ms. Niro and Blatt, as follows:

    **1. Ms Niro and Blatt produced a Credit Card Agreement dated 2009 that was not the operative document.**

Ms. Vessal argues that her credit card agreement dates back to 1988 and the use of the 2009 card agreement was a violation because Ms. Niro used it only because it was "available" and "convenient." Ms. Vessal claims that this is an omission or concealment of a material fact and a violation of the Act. The Panel previously addressed this issue, which is intertwined with the fact that Citi is not required to keep all documentation for eternity but does so for 7.5 years. Ms. Niro testified the 1988 card agreement was not available to her. Since it would be Citi who would provide the documentation and since Mr. Sabo also testified that the earlier agreements were not available, there is no deceptive practice shown. Additionally, Ms. Vessal offered no case law to support that such would be a violation of the Act. The Panel finds that there is no sufficient showing of deceptive practice under these circumstances.

    **2. Ms. Niro did not review the merits of the case before commencing litigation.**

This allegation was discussed previously and the Panel decided that Ms. Niro's testimony was persuasive on this issue and that the evidence showed that the proper attorney review occurred. There is no basis for a finding of a deceptive practice under this allegation.

    **3. Ms. Niro represented to the Court that she did not timely receive Ms. Vessal's Appeal Brief when it had been timely served.**

Ms. Niro admittedly sent a letter to the Court that she had not timely received Ms. Vessal's brief and sought a dismissal of the Appeal. Ms. Niro admitted that though the brief was given to by her office later than the appropriate date, that Ms. Vessal had in fact timely filed and served the brief. Ms. Niro admitted that she had made a mistake but that there was no intent to misrepresent or deceive the Claimant. The issue on appeal was Ms. Vessal seeking to overturn the lower court's decision and having the case dismissed in favor of arbitration. Citi ultimately agreed but Ms. Vessal would not dismiss the appeal. Ms. Niro applied to the Court for dismissal since there was no longer

an issue in controversy. The Panel finds no violation of the Illinois Act. Ms. Niro made an error and ultimately Citi agreed to the very relief that Ms. Vessal sought.

    4. **Ms. Niro refused to engage in negotiations to settle the debt collection matter and other issues in dispute.**

      The Panel recalls no testimony regarding this issue except that there was little communication between the parties and that on one occasion, Ms. Niro attempted to speak to Ms. Vessal regarding settlement but Ms. Vessal would not engage. Generally, issues regarding settlement are not allowed into evidence and are not considered by the Courts or Arbitrators. Additionally, the issue of Ms. Vessal's letter offering settlement was not placed in evidence and cannot now be considered. Nonetheless the Panel finds no violation of the act regarding the settlement issue.

    5. **Ms. Niro and Blatt seeking counsel fees and costs is a deceptive act.**

      Ms. Vessal argues that the Respondents' seeking counsel fees and costs is tantamount to a deceptive practice. No case law has been cited that supports that contention. The counsel fee and cost issue is often raised in consumer issues and an application to a deciding tribunal is not usually a basis to support a deceptive practice claim. The fees and costs claim is for $525. Clearly the Respondents are not asking for the cost and expenses for the arbitration proceeding. There is a section of the 2004 Card Agreement entitled "Collection Costs," which indicates that if collection of the account is sent to a non-salaried lawyer, the cardholder may be liable for reasonable counsel fees and expenses of any legal action taken to the extent permitted by law. The Respondents point to this section in support of their claim. The Panel's decision regarding counsel fees and expenses is discussed, *infra.*, however given that there is an arguable basis to assert a counsel fee claim, the Panel finds that a counsel fee and expense application under these circumstances does not rise to a violation of the Illinois act.

## 6. FAIR BILLING ACT/BILLING ERRORS AND DISPUTES

      The exact nature of Ms Vessal's claim against Citi for violating the Fair Billing Act, 15 U.S.C. § 1666(a) is unclear. The act does require the creditor to investigate an alleged billing error. However, the obligation is not triggered until the creditor receives a written notice of a dispute within 60 days of the sending of a statement to the consumer. The notice must identify the account in question, indicate the specific error and the consumer's reason as to why he/she believes there is an error. *Id.* There is no evidence that Ms. Vessal ever sent a written notice of a billing error. She did testify that she phoned a representative of Citi regarding the $5000 cash advance which she claimed she did not incur. The testimony was vague as to the date or circumstances of the call. She was clear, however, that Citi took no action to correct the alleged error and therefore argues that they did not fulfill their duty to investigate. Given that Ms. Vessal failed to comply with the requirements of the act and failed to comply with the provision of the card agreement of 2004 which also required a written notice, the Panel finds no violation of the Fair Billing Act on this issue.

      A second area of violation may be Ms. Vessal's claim that she had closed her account in 2007 and then again in 2009. She maintains that when she paid the account down to zero, she closed the account. She did not offer any other evidence of

13

closing the account other than having paid the entire balance. The evidence provided by Mr. Sabo was that the account was not closed in 2007 but rather that it was not used for a couple of months. The Panel finds that the account was not closed. Since there was no specific portion of the act cited as a violation, the Panel cannot analyze this claim any further.

Lastly, there is a claim that Citi did not provide any statements prior to 2004. If this is claimed as a violation of the Fair Billing Act, the Panel has previously determined that Citi was not required to retain records for the life of the credit card history. The Panel finds no violation for the reasons previously stated.

### B. Citi's Claims:
### 1. CITI'S DEBT CLAIM

Ms. Vessal testified that she obtained the credit account in 1988. She signed an agreement at that time and continued to use the credit card on an ongoing basis. She had a credit card agreement of 2004 and used that agreement as the basis of her claim for arbitration. That card agreement set out certain obligations involving the use of the credit card, which she did on a continuous basis. She paid off her account in 2007 and did not use it for a few months. Thereafter she did use the account for cash advances. She closed the account in 2009 however with a balance owed. The proofs showed that there were often large balance transfers and cash withdrawals followed by required monthly payments.

Mr. Sabo established that Ms. Vessal received monthly statements. They were sent to Ms. Vessal's home address. These statements continued to be sent even after she stopped making payments. She made her last payment on September 22, 2009. After that last payment was applied the account showed a balance of $22,414.88. The account was then charged off in April 2010. The evidence showed that the balance on the last statement mailed to Ms. Vessal is the same as the balance Citi is seeing in its complaint, specifically, $23,659.65.

Ms. Vessal however disputes a balance transfer of $5000 that was made on April 21, 2009. She maintains that she did not make that transfer. She further argues that she contacted Citi by phone and asked for an investigation of this issue. Citi disputes this ever having occurred and points to the requirement that any billing error be addressed in writing as required by the card agreement and by the Fair Billing Act. The evidence is also clear, per Mr. Sabo's testimony, that Citi does not have a copy of the $5000 transfer. Though it has copies of all others, their records do not contain the document reflecting the $5000 transfer.

The Panel is satisfied that under well-established principles of contract law, Ms. Vessal is liable for the breach of contract. Citi could not meet its burden of proof where the document evidencing the $5000 transfer is not produced. Citi admitted that it could not produce the document and had no reasonable explanation for its not being available. Ms. Vessal did not lose her right to dispute the validity of the $5000 "charge" to her account even though she failed to show that she had given proper written notice of her claimed error. The fact that the Panel found no Fair Billing Act violation does not absolve Citi from meeting its burden to prove the accuracy of the account balance. Thus the Panel finds that Citi failed to prove the $5000 transfer.

14

The Panel does find that all other charges and transfers were proven by the evidence and that Citi met its burden of proof on the balance. There was an enforceable promise, a breach of that promise and damages. Ms. Vessal is liable under South Dakota's common law of account stated at least for $23,659.65 - $5000=$18,659.65. Technically there may be an additional minor amount of interest or fees related to the $5000 transfer that would further reduce the amount due, however, there is also additional interest that could be calculated from 2010. The Panel has determined that additional calculations are not warranted because they would further prolong the proceedings and be of little benefit to Citi or Ms. Vessal to continue to pursue a recalculated amount and therefore find that the amount due Citi is $18,659.65.

## 2. CITI'S PETITION FOR ATTORNEY'S FEES

Citi's petition for attorney's fees is denied. Citi sought an award of counsel fees in the amount of $525. It is undisputed that the JAMS' Consumer Minimum Standards apply in this case. The standards provide that, "when a consumer initiates arbitration against the company,, the only fee required to be paid by the consumer is $250...All other costs must be borne by the company including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services."
In addition the 2004 agreement states under "Who Pays" that, "Each party will bear the expense of that parties attorneys, experts, and witnesses, and other expenses regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines."
The JAMS Consumer Minimum Standards do not deal with attorney's fees or pre-award interest. The JAMS Comprehensive Arbitration Rules, 24(g) states the Award of the Arbitrator may allocate attorney's fees and expenses and interest...if provided by the Parties' agreement or allowed by applicable law. Since this matter was resolved through arbitration., the Panel has decided that these provisions control. The other provision cited by Citi under the 2009 or 2004 card agreement entitled "Collection Costs" does indicate that if a lawyer (not salaried as a Citi employee) is referred the collection matter, the consumer is liable for attorney's fees costs and expense of any legal action to the extent permitted by law. However, no specific law has been cited to the Panel that would allow or require counsel fees to be awarded. The Panel has determined that since it is within the discretion of the arbitrator(s) to determine if attorney's fees should be awarded and since South Dakota law leaves the parties to their agreement on attorney's fees, SDCL §47-16-38, here with no other applicable law cited, the Panel declines to award attorney's fees.

## VII. AWARD

In this De Novo Appeal Proceeding, Ms. Vessal failed to prove any of her claims and is therefore awarded no relief on her claims. Citi is awarded $18,659.65 on its debt account claim. The Panel denies Citi's Petition for Attorney's Fees. This award

resolves all pending disputes between the parties

_____/s/_____
Hon. John J. Hughes, (Ret.)

_____/s/_____
Hon. William D. Missouri, (Ret.)

_____/s/_____
Hon. Maria M. Sypek, (Ret.)

Dated: November 17, 2014

16

Case: 1:15-cv-02209 Document #: 8-1 Filed: 03/20/15 Page 18 of 21 PageID #:164

_____
Hon. John J. Hughes, (Ret.)

_____
Hon. William D. Missouri, (Ret.)

_____
Hon. Maria M. Sypek, (Ret.)

Dated:  November 17, 2014

16

_____
Hon. John I. Hughes, (Ret.)

_____
Hon. William D. Missouri, (Ret.)

_____
Hon. Maria M. Sypek, (Ret.)

Dated:  November 17, 2014

_____
Hon. John J. Hughes, (Ret.)

_____
Hon. William D. Missouri, (Ret.)

Hon. Maria M. Sypek, (Ret.)

Dated:  November 17, 2014

16



## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Vessal, Taraneh - Appeal vs. Citibank (South Dakota) N.A.
Reference No. 1340010311

    I, John J. Carr, not a party to the within action, hereby declare that on November 26, 2014 I served the attached Arbitrtion Appeal Final Award on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Boston, MASSACHUSETTS, addressed as follows:

Ms. Taraneh Vessal
P.O. Box 4764
Oak Brook, IL 60522-4764
Tel: 312-933-8257
Email: tvessal@sbcglobal.net
tvessal@aol.com
    Parties Represented:
    Taraneh Vessal

Iryna Martyniv Niro Esq.
Gregory R. Dye Esq.
Blatt, Hasenmiller, Leibsker & Moore
125 S. Wacker Drive
Suite 400
Chicago, IL 60606
Tel: 312-704-9440
Email: iniro@bhlmlaw.com
gdye@bhlmlaw.com
    Parties Represented:
    Citibank (South Dakota), N.A.

    I declare under penalty of perjury the foregoing to be true and correct. Executed at Boston, MASSACHUSETTS on November 26, 2014

John J. Carr
jcarr@jamsadr.com